IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM SIMS, JR.,<br><br>        Plaintiff,<br><br>v.<br><br><br>NUANCE COMMUNICATIONS, INC., LLOYD CARNEY, MARK BENJAMIN, DANIEL BRENNAN, THOMAS EBLING, BOB FINOCCHIO, LAURA KAISER, MICHAEL KATZ, MARK LARET, and SANJAY VASWANI,<br><br>        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff William Sims, Jr. ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Nuance Communications, Inc. ("Nuance" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Nuance and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Nuance and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Microsoft Corporation ("Microsoft").

2. On April 11, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Microsoft. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $56.00 in cash per share of Nuance common stock owned (the "Merger Consideration").

3. On May 5, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Nuance and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Nuance shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of Nuance shares.

9. Defendant Nuance is incorporated under the laws of Delaware and has its principal executive offices located at 1 Wayside Road, Burlington, Massachusetts 01803. The Company's common stock trades on the NASDAQ under the symbol "NUAN."

10. Defendant Lloyd Carney ("Carney") is and has been the Chairman of the Board of Directors of Nuance at all times during the relevant time period.

11. Defendant Mark Benjamin ("Benjamin") is and has been the Chief Executive Officer ("CEO") and a director of Nuance at all times during the relevant time period.

12. Defendant Daniel Brennan ("Brennan") is and has been a director of Nuance at all times during the relevant time period.

13. Defendant Thomas Ebling ("Ebling") is and has been a director of Nuance at all times during the relevant time period.

14. Defendant Bob Finocchio ("Finocchio") is and has been a director of Nuance at all times during the relevant time period.

15. Defendant Laura Kaiser ("Kaiser") is and has been a director of Nuance at all times during the relevant time period.

16. Defendant Michal Katz ("Katz") is and has been a director of Nuance at all times during the relevant time period.

17. Defendant Mark Laret ("Laret") is and has been a director of Nuance at all times during the relevant time period.

18. Defendant Sanjay Vaswani ("Vaswani") is and has been a director of Nuance at all times during the relevant time period.

19. Defendants Carney, Benjamin, Brennan, Ebling, Finocchio, Kaiser, Katz, Laret and Vaswani are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, along with Defendant Nuance, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21. Nuance is a is a technology pioneer with market leadership in conversational AI and ambient intelligence. A full-service partner trusted by 77 percent of U.S. hospitals and 85 percent of the Fortune 100 companies worldwide, Nuance creates intuitive solutions that amplify people's ability to help others.

**The Company Announces the Proposed Transaction**

22. On April 12, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

**REDMOND, Wash., and BURLINGTON, Mass. – April 12, 2021 –** Microsoft Corp (Nasdaq: MSFT) and Nuance Communications, Inc. (Nasdaq: NUAN) today announced they have entered into a definitive agreement under which Microsoft will acquire Nuance for $56.00 per share, implying a 23% premium to the closing price of Nuance on Friday, April 9, in an all-cash transaction valued at $19.7 billion, inclusive of Nuance's net debt. Nuance is a trusted cloud and AI software leader representing decades of accumulated healthcare and enterprise AI experience. Mark Benjamin will remain CEO of Nuance, reporting to Scott Guthrie, executive vice president of Cloud & AI at Microsoft. The transaction is intended to close this calendar year.

Microsoft has accelerated its efforts to provide industry-specific cloud offerings to support customers and partners as they respond to disruption and new opportunities. These efforts include the Microsoft Cloud for Healthcare, introduced in 2020, which aims to address the comprehensive needs of the rapidly transforming and growing healthcare industry. Today's acquisition announcement represents the latest step in Microsoft's industry-specific cloud strategy.

Nuance is a pioneer and a leading provider of conversational AI and cloud-based ambient clinical intelligence for healthcare providers. Nuance's products include the Dragon Ambient eXperience, Dragon Medical One and PowerScribe One for radiology reporting, all leading clinical speech recognition SaaS offerings built on Microsoft Azure. Nuance's solutions work seamlessly with core healthcare systems, including longstanding relationships with Electronic Health Records (EHRs), to alleviate the burden of clinical documentation and empower providers to deliver better patient experiences. Nuance solutions are currently used by more than 55% of physicians and 75% of radiologists in the U.S., and used in 77% of U.S. hospitals. Nuance's Healthcare Cloud revenue experienced 37% year-over-year growth in Nuance's fiscal year 2020 (ended September 2020).

Microsoft's acquisition of Nuance builds upon the successful existing partnership between the companies that was announced in 2019. By augmenting the Microsoft Cloud for Healthcare with Nuance's solutions, as well as the benefit of Nuance's expertise and relationships with EHR systems providers, Microsoft will be better able to empower healthcare providers through the power of ambient clinical intelligence and other Microsoft cloud services. The acquisition will double Microsoft's total addressable market (TAM) in the healthcare provider space, bringing the company's TAM in healthcare to nearly $500 billion. Nuance and Microsoft will deepen their existing commitments to the extended partner

ecosystem, as well as the highest standards of data privacy, security and compliance.

"Nuance provides the AI layer at the healthcare point of delivery and is a pioneer in the real-world application of enterprise AI," said Satya Nadella, CEO, Microsoft. "AI is technology's most important priority, and healthcare is its most urgent application. Together, with our partner ecosystem, we will put advanced AI solutions into the hands of professionals everywhere to drive better decision-making and create more meaningful connections, as we accelerate growth of Microsoft Cloud for Healthcare and Nuance."

Beyond healthcare, Nuance provides AI expertise and customer engagement solutions across Interactive Voice Response (IVR), virtual assistants, and digital and biometric solutions to companies around the world across all industries. This expertise will come together with the breadth and depth of Microsoft's cloud, including Azure, Teams, and Dynamics 365, to deliver next-generation customer engagement and security solutions.

"Over the past three years, Nuance has streamlined its portfolio to focus on the healthcare and enterprise AI segments, where there has been accelerated demand for advanced conversational AI and ambient solutions," said Mark Benjamin, CEO, Nuance. "To seize this opportunity, we need the right platform to bring focus and global scale to our customers and partners to enable more personal, affordable and effective connections to people and care. The path forward is clearly with Microsoft — who brings intelligent cloud-based services at scale and who shares our passion for the ways technology can make a difference. At the same time, this combination offers a critical opportunity to deliver meaningful and certain value to our shareholders who have driven and supported us on this journey."

The transaction has been unanimously approved by the Boards of Directors of both Nuance and Microsoft. The deal is intended to close by the end of this calendar year and is subject to approval by Nuance's shareholders, the satisfaction of certain regulatory approvals, and other customary closing conditions.

Upon closing, Microsoft expects Nuance's financials to be reported as part of Microsoft's Intelligent Cloud segment. Microsoft expects the acquisition to be minimally dilutive (less than 1 percent) in fiscal year 2022 and to be accretive in fiscal year 2023 to non-GAAP earnings per share, based on the expected close timeframe. Non-GAAP excludes expected impact of purchase accounting adjustments, as well as integration and transaction-related expenses. The acquisition will not impact the completion of its existing share repurchase authorization.

* * *

Goldman Sachs & Co. LLC is acting as exclusive financial advisor to Microsoft, while Simpson Thacher & Bartlett LLP is acting as its legal advisor. Evercore is acting as exclusive financial advisor to Nuance, while Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as its legal advisor.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23. On May 5, 2021, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

25. The Proxy Statement contains projections prepared by the Company's and Microsoft's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping

and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA and (ii) Unlevered Free Cash Flow.

29. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Evercore's Financial Opinion**

30. The Proxy Statement contains the financial analyses and opinion of Evercore Inc. ("Evercore") concerning the Proposed Transaction, but fails to provide material information concerning such.

---

Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed by Evercore in the analysis; (ii) the basis for Evercore's selection of a reference range of enterprise value / Adjusted EBITDA multiples of 30.0x–40.0x; (iii) the basis for Evercore's selection of a reference range of equity value / LFCF multiples of 40.0x –50.0x; (iv) the Company's LFCF; (v) the Company's net debt; (vi) the number of fully diluted shares of the Company's common stock; (vii) the basis for Evercore's selection of a reference range of enterprise value / revenue multiples of 8.0x –11.0x; (viii) the basis for Evercore's selection of a reference range of enterprise value / Adjusted EBITDA multiples of 20.0x –30.0x; and (ix) the basis for Evercore's selection of a reference range of equity value / LFCF multiples of 30.0x – 40.0x.

32. With respect to Evercore's *Sum-of-the-Parts Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying Evercore's use of perpetuity growth rates of 3.5% to 4.5%; (iii) the inputs and assumptions underlying Evercore's use of the discount rates ranging from 8.0% to 9.0%; (iv) the Company's weighted cost of capital; (v) the basis for Evercore's application of a revenue multiple of 15.0x –20.0x; and (vi) the inputs and assumptions underlying Evercore's use of the discount rates ranging from 17.5% to 22.5%.

33. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the specific price targets observed as well as the sources thereof.

34. With respect to Evercore's *Selected HC & ENT Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Evercore in the analysis

35. With respect to Evercore's *Selected Vertical Software Transactions Analysis* for the Company, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Evercore in the analysis.

36. With respect to Evercore's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the specific transactions and premiums observed by Evercore in the analysis.

37. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

38. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information

to shareholders although they could have done so without extraordinary effort.

44. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

45. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

47. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

48. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Nuance within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Nuance, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction. They were thus directly involved in preparing this document.

53. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 12, 2021                                                              Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*